**CV 15 6824**

SLR:LDM:KKO
F. #2015V02679

**GLEESON, J.**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**GO, M.J.**

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,

        Plaintiff,

      -against-

TWO HUNDRED SEVENTY FOUR (274)
PAIRS OF DOG-FACED WATER SNAKE
MANOLO BLAHNIK SHOES,

        Defendants *in rem*.

VERIFIED COMPLAINT
*IN REM*

Civil Action No.

- - - - - - - - - - - - - - - -X

Plaintiff, United States of America, by its attorney, ROBERT L. CAPERS, United States Attorney for the Eastern District of New York, Karin Orenstein, Assistant United States Attorney, of counsel, for its verified complaint *in rem*, hereby alleges upon information and belief as follows:

## NATURE OF THE ACTION

1. This is a civil forfeiture action *in rem* brought by the United States of America to forfeit and condemn to the use of the United States the above-captioned property (the "Defendants *in rem*"). The Defendants *in rem* are subject to forfeiture pursuant to the Endangered Species Act of 1973 (the "ESA"), Title 16, United States Code, Section 1540(e)(4)(A), as wildlife transported, shipped, or imported contrary to the provisions of the ESA, any regulation made pursuant thereto, or any permit or certificate issued thereunder.

## DEFENDANTS *IN REM*

2. The Defendants *in rem* consist of 274 pairs of shoes (548 individual shoes) imported by Manolo Blahnik USA LTD ("Manolo Blahnik" or the "Importer"). The shoes are made, in least in part, from the skins of the dog-faced water snake, *Cerberus rynchops*. *Cerberus rynchops* is an endangered species listed in Appendix III of the Convention on International Trade in Endangered Species of Wild Fauna and Flora, Mar. 3, 1973, 27 U.S.T. 1087, T.I.A.S. No. 8249 (entered into force July 1, 1975) ("CITES").

3. On or about July 28, 2013, Manolo Blahnik attempted to import the Defendants *in rem* from Italy via John F. Kennedy International Airport ("JFK") in Jamaica, New York. In the documents filed on behalf of Manolo Blahnik with U.S. Department of the Interior, Fish and Wildlife Service ("FWS") to clear the entry of the shipment, the Defendants *in rem* were declared to be wild collected specimens whose country of origin was China.

4. On or about September 23, 2013, FWS inspectors seized the Defendants *in rem* on the grounds that their importation violated CITES. The Defendants *in rem* are currently in the custody of FWS Jamaica, New York.

## JURISDICTION AND VENUE

5. This court has jurisdiction over this action pursuant to Title 28, United States Code, Sections 1345, 1355 and 1395(b), and Title 16, United States Code, Section 1540(c).

6. Venue in the Eastern District of New York is proper, pursuant to Title 28, United States Code, Sections 1355(b)(1)(A) and (B) and 1395(b), in that the acts or omissions giving rise to the forfeiture occurred within the Eastern District of New York and Defendants *in rem* are presently found in the Eastern District of New York.

# FACTS

1. **Statutory and Regulatory Background**

    A. **CITES**

    7. The United States has been a party to CITES since March 3, 1973. The United States enforces the CITES treaty through the ESA, 16 U.S.C. §§ 1531 *et seq.*, and its implementing regulations, 50 C.F.R. Part 23.

    8. The purpose of the CITES treaty is to protect species that are, or may become, threatened with extinction by international trade. International trade includes the import or export of a CITES listed species for any purpose. CITES lists the affected species on Appendices I, II and III to the treaty, with each appendix corresponding to the threat level facing the species listed therein.

    9. CITES operates by creating a system of permits to closely regulate the trade in listed species. Each country that is a party to CITES must report all of the permits to the CITES Secretariat in Geneva, Switzerland every year for use in reviewing whether a species requires additional conservation measures.

    10. CITES requires each signatory country to prohibit shipments that violate CITES and to take measures to enforce CITES. Additionally, CITES requires each country to implement measures that penalize CITES violations, and that provide for the confiscation of specimens imported in violation of CITES. Signatory countries may adopt domestic laws that are stricter than what CITES requires, but must at a minimum enact laws that ensure compliance with CITES.

    11. Violations of the CITES permit regulations undermine world-wide conservation efforts as well as the United States's treaty obligations.

12. The dog-faced water snake, *Cerberus rynchops*, is listed in Appendix III of CITES.

### B. Enforcement of CITES Through the ESA and its Implementing Regulations

13. As set forth above, in the United States, CITES is enforced through the ESA and its regulations. The ESA specifically prohibits the trade in any specimen contrary to CITES or the possession of any specimen that was traded in violation of CITES. 16 U.S.C. § 1538(c)(1). The implementing regulations provide detailed instructions regarding the need for proper CITES permits. 50 C.F.R. Part 23. Unless the requirements of Part 23 are met, it is unlawful to import or engage in international trade with any specimen listed in Appendix I, II or III of CITES. 50 C.F.R. Part 23.13(a). Part 23 requires compliance with the regulations set forth in 50 C.F.R. Part 14 for the importation of wildlife. 50 C.F.R. § 23.3(c).

14. To import a specimen of a species listed on Appendix III of CITES that has previously been exported from its country of origin to another country, the shipper must first obtain a valid CITES re-export certificate from the country of re-export. CITES Art. V(4); 50 C.F.R. § 23.20(e).

15. The United States will not accept a CITES document that contains erroneous or misleading information. 50 C.F.R. § 23.26(c)(7).

16. The United States will not accept a CITES document that indicates that the specimen was "wild collected" (indicated on the CITES document with a source code of "W") where the specimen is from a country that is outside the range of the species, unless the United States has information indicating that the species has been established in the wild in that country through accidental introduction or other means. 50 C.F.R. § 23.26(c)(19).

4

17. If the source of a specimen is unknown, the importer must use the source code "U" and justify the use of this code on the face of the CITES document. 50 C.F.R. § 23.24.

18. The ESA authorizes the FWS to seize any specimen that is illegally imported. Any such specimen imported or possessed in violation of the regulations is subject to forfeiture.

19. Title 50, Code of Federal Regulations, Section 14.52 provides procedures for the importation and clearance of wildlife at United States ports. Section 14.52(a) provides in relevant part that an "[FWS] officer must clear all wildlife imported into the United States prior to release from detention by Customs officers." Section 14.52(c) provides in relevant part that to "obtain clearance, the importer, exporter, or the importer's or exporter's agent will make available to" an FWS officer all of the following:

   (1) All shipping documents (including bills of lading, waybills and packing lists or invoices);

   (2) All permits, licenses or other documents required by the laws or regulations of the United States;

   (3) All permits or other documents required by the laws or regulations of any foreign country;

   (4) The wildlife being imported or exported; and

   (5) Any documents and permits required by the country of export or re-export for the wildlife.

50 C.F.R. § 14.52(c).

20. Pursuant to Title 50, Code of Federal Regulations, Part 14, all persons importing wildlife, other than certain fishery products, are required to file a declaration that is prescribed by FWS, known as Form 3-177. 50 C.F.R. § 14.61.

5

### C. The Attempted Importation of the Defendants *in Rem*

21. Based on the information provided to FWS in connection with the import of the Defendants *in rem*, the *Cerberus rynchops* snakeskins which were used to make the Defendants *in rem* were originally exported from China to Hong Kong, and subsequently re-exported from Hong Kong to Italy, and from Italy to the United States.

22. The dog-faced water snake, *Cerberus rynchops*, is not known to have a wild population in China. The United States has no information indicating that the species has been established in the wild in that country through accidental introduction or other means.

23. On or about July 28, 2013, Manolo Blahnik imported or attempted to import the Defendants *in rem* from Italy into the United States through JFK.

24. On or about the same date, the Importer's customs broker, Savitransport, Inc. (the "Customs Broker"), electronically submitted a Form 3-177 to FWS on behalf of Manolo Blahnik. The Form 3-177 stated that the source of the Defendants *in rem* was wild collected and their country of origin was China. The Form 3-177 further declared that the value of the Defendants *in rem* was $43,292.

25. On or about July 31, 2013, the Customs Broker submitted an import package to FWS on behalf of Manolo Blahnik for the Defendants *in rem*. In addition to the Form 3-177, the import package included Italian CITES re-export permits and shipping documents. The Italian CITES re-export permit for the Defendants *in rem* identified the source of the *Cereberus rynchops* as wild collected, and the country of origin as China.

26. On or about the same date, FWS rejected the Form 3-177 on the grounds that China is a country that is outside the range of the species *Cerberus rynchops*. In addition, FWS requested copies of the original Chinese CITES export permit. Despite this request, the

Importer failed to provide the requested CITES export permit from the Chinese Management Authority.

27. On or about August 1, 2013, the Customs Broker provided copies of the Hong Kong re-export certificates for the *Cerberus rynchops* specimens used to make the Defendants *in rem*. The Hong Kong Management Authority requires a CITES export permit for exports from China to Hong Kong. The re-export certificates were deficient because they (1) incorrectly stated that *Cerberus rynchops* is not a CITES species, (2) omitted the specimens' source, and (3) omitted the CITES document number of the original Chinese export permit. In light of these fatal defects in the re-export certificate from Hong Kong, FWS did not accept the CITES re-export certificate issued by the Italian Management Authority.

28. On or about September 23, 2013, FWS inspectors seized the Defendants *in rem* on the grounds that they were imported in violation of Title 16, United States Code, Section 1538(c), and Title 50, Code of Federal Regulations, Sections 23.13(a) and 23.26(c)(19).

29. On or about December 10, 2013, FWS was contacted by a representative of the foreign exporter's supplier, Pelicon SRL ("Pelicon"), who stated that the snakeskins used to make the Defendants *in rem* were Chinese in origin, but that Pelicon was unsure of the source. Pelicon's representative stated that when the source of wildlife is unknown, it is Pelicon's practice to list the specimens' source as wild collected. However, as set forth above in paragraph 16, to indicate that the source of a specimen is unknown, the re-export permit must use the source code "U" for unknown, not "W" for wild collected. The use of source code "W" on the re-export permit was therefore erroneous.

7

## FIRST CLAIM FOR RELIEF
### (Non-compliance With CITES: Missing and Invalid Documents)

30. Plaintiff repeats the allegations of paragraphs 1 through 29 as if fully set forth herein.

31. No Chinese export permit for the *Cerberus rynchops* specimens used to make the Defendants *in rem* has been presented to demonstrate compliance with CITES.

32. The Hong Kong re-export permit for the *Cerberus rynchops* specimens used to make the Defendants *in rem* incorrectly states that the specimens were not protected by CITES. A valid re-export permit from Hong Kong is required for compliance with CITES. Accordingly, the Italian re-export permit presented to FWS does not comply with CITES.

33. The *Cerberus rynchops* specimens used to make the Defendants *in rem* were therefore traded contrary to the provisions of CITES, rendering their possession unlawful under Title 16, United States Code, Section 1538(c)(1).

34. Accordingly, the Defendants *in rem* are subject to forfeiture to the United States pursuant to Title 16, United States Code, Section 1540(e)(4)(A), as wildlife transported, shipped, or imported contrary to Title 16, United States Code, Section 1538(c).

## SECOND CLAIM FOR RELIEF
### (Non-compliance with CITES: Erroneous Source of Wildlife)

35. Plaintiff repeats the allegations of paragraphs 1 through 29 as if fully set forth herein.

36. The Defendants *in rem* were imported into the United States in violation of CITES, the ESA and the ESA regulations in that the required CITES document for the importation of the Defendants *in rem*, to wit, the re-export certificate from Italy, did not

8

comply with CITES because it stated that the specimens of *Cerberus rynchops* were wild caught in China, a country that is outside the range of the species.

37. Accordingly, the Defendants *in rem* are subject to forfeiture to the United States pursuant to Title 16, United States Code, Section 1540(e)(4)(A), as wildlife transported, shipped, or imported contrary to Title 16, United States Code, Section 1538(c), and Title 50, Code of Federal Regulations, Section 23.13(a), 23.26(c)(7) and 23.26(c)(19).

### THIRD CLAIM FOR RELIEF
### (Failure to Present Required Document to FWS)

38. Plaintiff repeats the allegations of paragraphs 1 through 29 as if fully set forth herein.

39. The Defendants *in rem* were imported into the United States contrary to CITES, the ESA and ESA regulations in that the importer did not present to FWS an export permit from China, a document specifically required by the Hong Kong Management Authority for imports of endangered species from China, and therefore a document that was required to be presented to FWS under Title 50, Code of Federal Regulations, Section 14.52(c).

40. Accordingly, the Defendants *in rem* are subject to forfeiture to the United States pursuant to Title 16, United States Code, Section 1540(e)(4)(A), as wildlife transported, shipped, or imported contrary to Title 16, United States Code, Section 1538(c), and Title 50, Code of Federal Regulations,. Sections 14.52(c), 23.3(c) and 23.13(a).

### CONCLUSION

WHEREFORE, plaintiff, United States of America, requests (1) that a warrant of this Court be issued for the arrest of the Defendants *in rem*; (2) that due notice of these

proceedings be given to all interested persons; (3) that the Defendants *in rem* be forfeited and condemned to the use of the United States of America; (4) that Plaintiff be awarded its costs and disbursements in this action; and (5) for such other relief and further relief as this Court deems just and proper.

Dated:  Brooklyn, New York
        December 1, 2015

>                               ROBERT L. CAPERS
>                               United States Attorney
>                               Eastern District of New York
>                               271 Cadman Plaza East
>                               Brooklyn, New York 11201
>
> By:   _____
>                               Karin Orenstein
>                               Assistant U.S. Attorney
>                               (718) 254-6188

## VERIFICATION

Naimah Aziz, hereby declares as follows:

1. I am a Supervisory Wildlife Inspector with the United States Fish and Wildlife Service.

41. I have read the within verified complaint *in rem* and know the contents thereof.

42. I believe the matters contained in the within verified complaint *in rem* are true and accurate to the best of my knowledge, information and belief.

43. The source of my information and the grounds for my belief are personal knowledge and information provided by other law enforcement officers and the official files and records of the United States of America.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: Valley Stream, New York
       November 30, 2015

_____
Naimah Aziz
Supervisory Wildlife Inspector
U.S. Fish & Wildlife Service